UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KURT D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-00297-SEB-MPB |
| ) | |
| ANDREW M. SAUL, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 12). Plaintiff Kurt D.[1] seeks judicial review under 42 U.S.C. § 405(g) of a final decision of Defendant Commissioner of the Social Security Administration ("SSA") denying his request for waiver of overpayment of $34,687.00 in social security benefits. *See* 42 U.S.C. § 404(a). After an Administrative Law Judge ("ALJ") denied the request for waiver, Kurt D. filed a timely request for review of the ALJ's decision with the Appeals Council. The Appeals Council denied review, and plaintiff sought review in federal court. Plaintiff contends that the ALJ erred in denying his request because he was not at fault for causing the overpayment and requiring payment would defeat the purposes of the Social Security Act. This matter is fully briefed.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

(Docket No. 19, Docket No. 24, Docket No. 27). It is recommended that the District Judge **REMAND** the decision of the Commissioner of the Social Security Administration.

### I. Facts

Kurt D. is legally blind. (Docket No. 9 at ECF p. 25). He initially applied for and began receiving disability insurance benefits ("DIB") in December 2007. (Docket No. 9 at ECF p. 24). In March 2008 Kurt D. returned to work for Berends Hendricks Stuit Insurance ("BHS Insurance"). (Docket No. 9 at ECF p. 28; Docket No. 9-2 at ECF p. 19). He continued to work at BHS Insurance for longer than nine months—until February 2009—earning income at levels at or above substantial gainful employment. (Docket No. 9 at ECF p. 28; Docket No. 9-1 at ECF pp. 64-65; Docket No. 19 at ECF p. 3).

Beginning in June of 2009, Kurt D. was self-employed as a licensed insurance agent. (Docket No. 9-2 at ECF p. 28). He remained in this position through July 2010. (*Id.*). In July 2010, Kurt D. remained self-employed, but under a new entity as an insurance consultant for his own business, where he acted as an independent contractor for groups of clients. (*Id.*). He remained in this role, but also began employment as a Manager for the Rehabilitation Center for Bosma Enterprises on July 8, 2013. (*Id.*). As of the time of the hearing, Kurt D. was still employed at Bosma Enterprises. (*Id.*). Kurt D. asserts that he informed the Employment Services Department at Bosma Enterprises that he was receiving disability payments from the SSA and that he wanted Bosma to take over his Ticket to Work.[2] Kurt D. indicates that Bosma made copies of each of his pay stubs and submitted them to the SSA. (Docket No. 19 at ECF p. 4).

---

[2] "Social Security's Ticket to Work program supports career development for Social Security disability beneficiaries age 18 through 64 who want to work. The Ticket program is free and voluntary. The Ticket program helps people with disabilities progress toward financial independence." *About Ticket to Work*, TICKET TO WORK, https://choosework.ssa.gov/about/index.html (last visited July 24, 2019).

In May 2014, Debbie Thompson from the SSA contacted Kurt D. regarding specific income amounts. (Docket No. 9-2 at ECF p. 30). On June 24, 2014, Kurt D. received a letter from the SSA stating that the SSA had overpaid Kurt D. in the amount of $34,687.40. (Docket No. 9-1 at ECF pp. 66–68). On July 21, 2014, Kurt D. submitted a request for a waiver of repayment. (Docket No. 9-1 at ECF pp. 63–65). A hearing was held on February 4, 2016, after the waiver request was denied initially and on reconsideration. (Docket No. 9-3 at ECF pp. 35–49). Following the hearing, the ALJ denied Kurt D.'s request for a waiver of overpayment on June 15, 2016. (Docket No. 9 at ECF pp. 24–32). Kurt D. timely filed his appeal, which was denied on November 30, 2017. (Docket No. 9 at ECF pp. 3–6). This litigation followed. (Docket No. 1).

## II.     Standard of Review

The Court reviews the Commissioner's waiver decision under the same standards ordinarily applied in the denial of benefits context, affirming the Commissioner's decision as long as it is supported by substantial evidence and is not contrary to law. *See Banuelos v. Apfel*, 165 F.3d 1166, 1169 (7th Cir. 1999), *overruled in part on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir. 1999). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (quotation omitted). The reviewing court must consider all evidence on the record; however, it may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

### III. Analysis

### I. The ALJ's Findings

The ALJ determined that Kurt D.'s trial work period ("TWP") began March 2008 and ended November 2008. (Docket No. 9 at ECF p. 28). Kurt D.'s re-entitlement period began December 2008, the month following the completion of his TWP. The ALJ then found that Kurt D.'s disability ceased due to substantial gainful activity ("SGA") effective December 2008 and benefits were not payable due to SGA for March 2009, June 2010, September 2011 through October 2011, and July 2013 onward. (Docket No. 9 at ECF p. 29). Specifically, the ALJ found Kurt D.'s re-entitlement period ended December 2011; thus, when he performed SGA in July 2013—that became his termination month. (*Id.*). The ALJ found that work provisions and earnings information used for the work reviews were provided to the claimant, and he did not appeal the work review determinations. (*Id.*). The ALJ concluded that benefits were payable for the month the re-entitlement period began and the two succeeding months pursuant to 20 C.F.R. § 404.1592a(a)(2)(i). (*Id.*).

The ALJ indicated that the self-employment income used for the work review was his net self-employment as reported to his earnings record from the IRS (Docket No. 9 at ECF p. 30). He noted that Kurt D. did not provide tax returns to suggest that his earnings record was incorrect or that he had filed amended tax returns. (*Id.*). The ALJ also responded to Kurt D.'s argument that he was allowed more than one TWP and that he was never informed of his work provisions by stating that the work review accurately applied the TWP and re-entitlement period provisions in accordance with pertinent laws and regulations. (Docket No. 9 at ECF p. 31). The ALJ indicated numerous ways Kurt D. could have had these provisions explained to him and

4

that they were explained[3] by the field office when he inquired about his TWP. (*Id.*). The ALJ also held that a summary of work provisions is typically provided to a claimant if work is reported or when work reviews are conducted. (*Id.*).

The ALJ determined Kurt D. was overpaid benefits in the amount of $34,687.00 during the period of March 2009 to June 2014, and that he was at fault in causing the overpayment for failure to proactively notify the administration of his work activity as required by his reporting responsibilities, which were provided in his application for Social Security benefits. (Docket No. 9 at ECF p. 32). The ALJ reasoned that the record does not contain any work reports, or paystubs, or documentation that the claimant proactively notified the administration of his work activity as required by his reporting responsibilities. (*Id.*). Thus, he concluded that Kurt D. was at fault for causing the overpayment. (*Id.*). Finally, the ALJ found that recovery of the overpayment was not waived. (*Id.*).

II. **Review of Plaintiff's Assertions of Error**

  A. **The Social Security Administration ("the Administration") did not waive its right to recover any alleged overpayment.**

Kurt D. argues that the Administration has waived any right to recover the alleged overpayment as it continued to pay him his benefits well after it became fully aware of his income. (Docket No. 19 at ECF p. 9). The Commissioner counters that Kurt D.'s argument is skeletal and thus, waived and that Kurt D. did not contact the agency himself. Because Kurt D.'s argument as to this point is skeletal and the undersigned recommends remand on other grounds, this point will only be briefly addressed.

---

[3] The ALJ cites Exhibit 4E for this proposition. Exhibit 4E is an October 24, 2014, post-disability-benefit termination document and does not speak to what Plaintiff knew prior to disability benefit termination, when he had a reporting obligation. (Docket No. 9-3 at ECF pp. 30–34).

In the Seventh Circuit "'skeletal' arguments may be properly treated as waived, as may arguments made for the first time in reply briefs." *Hernandez v. Cook Cnty. Sherriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011). Kurt D. does not cite legal authority for his contention that the Administration waived its right to collection of the overpayment because it kept paying Kurt D. his monthly disability benefits after he began working at Bosma in July 2013 and for two months after it informed him of the alleged overpayment in May 2014. (Docket No. 19 at ECF p. 9). Given Kurt D. did not cite any case law or regulations indicating that the agency waives its right to collect an overpayment if it does not notify a claimant within a certain time period, the undersigned finds that this argument has been waived. *Hernandez*, 634 F.3d at 913.

### B. The ALJ's determination that plaintiff was at fault for causing the overpayment is not supported by substantial evidence.

Next, Kurt D. argues that he is without fault in causing any alleged overpayment. (Docket No. 19 at ECF p. 9). He argues that he was not without fault because he was never told that he was limited to only one TWP; the SSA failed to send correspondences to him in an accessible format, namely audio CD-ROMs due to his total and permanent blindness; and the SSA failed to consider his expenses as a self-employed individual as they were required to do so. (Docket No. 19 at ECF pp. 9–13). The Commissioner responds that the regulation clearly provides for one TWP; that the record does not support the conclusion that non-audio CD-ROM materials were inaccessible to Kurt D.; and that the ALJ found that the self-employment income that the agency used was Kurt D.'s net self-employment income as reported to his earnings record from the IRS. (Docket No. 24 at ECF pp. 8-15).

Under 42 U.S.C. § 404, the Secretary is required to recover any overpayment of Social Security benefits. Section 404(b) provides that such recover may be waived if both of the following conditions are met: (1) the overpaid individual was without fault in causing the

overpayment; and (2) recovery would defeat the purpose of Title 2 of the Social Security Act or would be against equity and good conscience. *See also* 20 C.F.R. § 404.506. In this case the ALJ found that Kurt D. was not without fault and therefore never reached the second prong of the test.

In determining if an individual is without fault, the Administration is to consider all pertinent circumstances including the individual's age, intelligence, education, and physical and mental condition. 20 C.F.R. § 404.507. In particular, fault depends on whether the overpayment resulted from:

> (1) an incorrect statement made by the individual which he knew or should have known to be incorrect; or
> (2) failure to furnish information which he knew or should have known to be material; or
> (3) with respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*Id.* Further, 20 C.F.R. § 404.511 makes clear that a person will be at fault if he shows either a lack of good faith or fails to exercise "a high degree of care."

The Plaintiff bears the burden of demonstrating that he was without fault. *See Rini v. Harris*, 615 F.2d 625, 627 (5th Cir. 1980). The fact that the Administration made an overpayment does not relieve the overpaid individual from liability for repayment if he was not without fault. 20 C.F.R. § 404.507. The Secretary's finding that an individual is not without fault must be upheld by the reviewing court so long as it is supported by substantial evidence in the record. 42 U.S.C. § 405(g). Again, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *Richardson v. Perales*, 402 U.S. 389, 401 (1971). More specifically, the substantial evidence test requires the court to find that the Secretary's findings are buttressed "by more than a scintilla of evidence, although less

7

than a preponderance of evidence." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).

The ALJ found that "[t]he work provisions and the earnings information used for the work reviews were provided to the claimant, and he did not appeal the work review determinations." (Docket No. 9 at ECF p. 29). With regards to his self-employment earnings, the ALJ found that "the self-employment income that was used for the work review was his net self-employment income as reported to his earnings record from the IRS (Exhibit 4D)." (*Id.* at ECF p. 30). The ALJ noted "[t]he claimant did not provide tax returns to suggest that his earnings record was incorrect or that he had filed amended tax returns." (*Id.*). With regards to Kurt's TWP, the ALJ found that "the work review accurately applied the TWP and re-entitlement period provisions in accordance with the pertinent laws and regulations (20 CFR 404.1592)." (*Id.* at ECF p. 31). The ALJ found "a summary of work provisions are typically provided to a claimant if work is reported or when work reviews are conducted." (*Id.*) Finally, the ALJ found that the claimant's application for benefits provided reporting responsibilities, including the claimant's responsibility to notify the agency of his work activity. (*Id.* at ECF p. 32). The ALJ also found that there was no evidence of record that the claimant reported his work activity to the administration, such as through work reports, paystubs, or any other documentation that the claimant proactively notified the administration of his work activity as required by his reporting responsibilities. (*Id.*). The ALJ concluded that Kurt D.'s wages were well above substantial gainful activity limits such that he should have known it could potentially affect his eligibility for disability benefits, yet he failed to question or return the disability payments. (*Id.*).

The question for the undersigned is whether the record is sufficient to support these conclusions.

There is very little evidence in the record from December 2007, when Kurt D. began receiving disability benefits, until May 2014, when the Administration contacted Kurt D. with questions regarding his income. Post-disability-benefit-termination documents indicate that Kurt D. received at least two work reviews (one in 2008 and one in 2009), explaining what a TWP was. (Docket No. 9-2 at ECF p. 14). Other post-termination documents indicate he received six work reviews during the period he was receiving disability benefits. (Docket No. 9-2 at ECF p. 16). The record does not include the underlying work reviews, but an April 24, 2015, summary of the file corroborated that "since Kurt D. has been on Disability Benefits SSA has done 6 work reviews on him. The letters sent to him during each work review specifically stated when his trial work months began and ended." (Docket No. 9-1 at ECF p. 2).

Kurt D. indicated that due to his total and permanent blindness he requested that all correspondence be sent to him in an audio format on a CD-ROM. (Docket No. 19 at ECF p. 10); Docket No. 9-2 at ECF p. 29). Yet, in eight years he contends that the Administration only sent two CD-ROMs. (Docket No. 19 at ECF p. 10). He concludes that any information received the from SSA was inaccessible due to his total and permanent blindness and the ALJ erred in failing to consider this because, when considering fault an ALJ must take physical limitations into account. (*Id.*) citing *Begoun v. Astrue*, 2011 WL 307375, at \*7 (N.D. Ill. Jan. 28, 2011) (citing 42 U.S.C. § 404(b); 20 C.F.R. § 404.507). Kurt D. argues he was without fault because the Administration failed to provide information to him in an accessible format. (Docket No. 19 at ECF p. 11).

The Commissioner responds that Kurt D.'s 'accessible format' argument is disingenuous because he simultaneously argues that he had information on and understood what a trial work period was (he just thought he was entitled to an unlimited number), but he also did not know

9

what the TWP really was because the agency did not send him information on an audio CD-ROM. (Docket No. 24 at ECF p. 12). The Commissioner argues it is clear from the record that Plaintiff knew how to access information about his disability benefits on the agency's website, as he alleged that he "reviewed the SSA web site [sic] many times" for information about the TWP, but "could never locate any explicit warning as to an individual that a person is only allowed one trial work period in their lifetime." (Docket No. 24 at ECF p. 12, *citing* Docket No. 9-1 at ECF p. 77).

The first flaw in the Commissioner's argument is that the ALJ did not consider Kurt D.'s blindness and the impact it may have had, if any, with the ALJ's fault determination. As already noted, an ALJ must "specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language)." 42 U.S.C. § 404(b); *see also* 20 C.F.R. § 404.507 (same); The reasoning provided by the Commissioner is just that—reasoning of the Commissioner, not the ALJ. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace.").

It is possible that the ALJ may have considered Kurt D.'s blindness and rejected it as a relevant circumstance in his fault determination. It is also possible that the ALJ did not. The undersigned is assigned with the task of determining whether substantial evidence supports the ALJ's conclusions—not to make new conclusions based on the evidence. If the ALJ's decision omits a discussion on an issue that the regulations require him to consider, then the undersigned cannot make a determination as to whether that decision is supported by substantial evidence. *Compare Erickson v. Colvin*, 2015 WL 757363, at *2 (D. Minn. Feb. 23, 2015) ("As required by

the SSA's regulations, the ALJ considered [Plaintiff's] blindness and her reported difficulties in communicating."), with *Kainer-Cargile v. Colvin*, 2013 WL 5587084, at *5 (N.D. Ill. Oct. 10, 2013) ("Other than noting that there was a sign language interpreter at the hearing, the ALJ made no mention of [Plaintiff] being deaf, and failed to consider any impact it might have had on her Odyssey through the Social Security bureaucracy.").

The Commissioner also takes issue with alleged concessions by Kurt D., which the Commissioner argues indicate Plaintiff was at least generally aware of his reporting requirements. (Docket No. 24 at ECF p. 13). However, one of the documents the Commissioner relies on is post-ALJ decision, August 11, 2016, letter that Kurt D. sent to the Appeals Council along with his Request for Review of Hearing Decision and, therefore, cannot be used to review whether the ALJ's decision was supported by substantial evidence. (Docket No. 9-1 at ECF pp. 76–78). Relying on evidence that the ALJ did not mention and could not have seen is another violation of the *Chenery* doctrine. The other pin cite that the Commissioner relies on, (Docket No. 9-2 at ECF p. 29–30), was a summary that Kurt D. presented to the ALJ during his hearing, however the specific pages the Commissioner points this Court to do not support his argument that Plaintiff "all but concedes that he [was aware of the requirements], but never reported his self-employment through the two insurance companies he started." (Docket No. 24 at ECF p. 13). If anything, the pages the Commissioner pin cites contradict this argument. (Docket No. 9-2 at ECF p. 29) ("As I started to receive disability income again at the start of [my self-employment], I was never informed by SSA; in the form of an accessible format, any instructions as to my obligation to report to them any earned income that I may have generated. I never received any forms to complete, nor received any phone calls from SSA asking me if I had any earned income to report.").

It is possible that the ALJ considered Plaintiff's submission, which was also discussed at the hearing (Docket No. 9-3 at ECF p. 37), and rejected it. But, the ALJ failed to indicate whether he found any part of the Plaintiff's submission or hearing testimony credible or disbelieved it in its entirety. One may suppose that the ALJ disbelieved Plaintiff's submissions, given his ultimate conclusions. But the ALJ gave no explanation for it, and he was required to. The reasons for a credibility finding must be expressed, not implied. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 788 (7th Cir. 2003). Here, the ALJ provides no rationale that would allow this Court to engage in a meaningful review of his decision and, for this reason as well, the case must be remanded. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (" . . . ALJ [must] explain[] his analysis of the evidence with enough detail and clarity to permit meaningful review.").

Next, despite the ALJ's conclusions the record provides no evidence that at the time Kurt D. was receiving his disability payments (and thus had reporting obligations) that he was provided with information from which he knew or could have inferred those obligations. The ALJ assumed that Plaintiff's application for Social Security benefits provided reporting responsibilities, including the claimant's responsibility to notify the Administration of his work activity. (Docket No. 9 at ECF p. 32). Plaintiff's application is not part of the record, nor does the ALJ provide any other basis for his assumption. If this Court were to take judicial notice of the fact that all applications for benefits provide reporting responsibilities then the provision in 20 C.F.R. § 404.507 ("failure to furnish information which he knew or should have known to be material") would be meaningless as it would be presumed that every disability beneficiary had knowledge of material information based on his application. *See also Kainer-Cargile*, 2013 WL

12

5587084, at *4 (noting application in the record was not Plaintiff's application, thus ALJ had no basis for finding that Plaintiff was made aware of the reporting requirements).

Likewise, the ALJ apparently assumed that Kurt D.'s work reviews provided a summary of work provisions regarding TWP and the re-entitlement period. (Docket No. 9 at ECF p. 31). But the record is devoid of any description of those work reviews, other than when two of them may have occurred, or any other indication of the nature or content of the communications related to the work reviews. In fact, the record contains no communications between the Administration and Kurt D. from December 2007, when Plaintiff began receiving disability insurance, to 2014 when the SSA indicated that they had information that could affect disability payments. Without this, or any questioning as to the same issues at the hearing, there is insufficient evidence to support the ALJ's conclusion that "a summary of work provisions are [sic] typically provided to a claimant if work is reported or when work reviews are conducted." (Docket No. 9 at ECF p. 31). While "typically" occurs, is not evidence that it was necessarily done in Kurt D.'s instance and the evidence on the record does not indicate otherwise. *See McIntyre v. Bowen*, 1987 WL 7472, at *5 (N.D. Ill. Mar. 3, 1987). And lastly, the ALJ also concludes that "[t]he work provisions and the earnings information used for the work reviews were provided to the claimant, and he did not appeal the work review determinations." (Docket No. 9 at ECF p. 29). The ALJ does not cite to the record for this statement.

The ALJ's reasoning that—if Kurt D. had questions regarding TWP, he could have called and had those provisions explained to him—illustrates the problem of relying only on post-benefit-termination documents. If we accept Kurt D.'s assertion that he believed he was entitled to more than one TWP, then he would have had no reason to contact the Administration to ask questions as he believed he was in accordance with the regulations. Without evidence of pre-

13

benefit-termination communications this Court cannot determine if Kurt D.'s beliefs regarding the TWP or his reporting obligations, generally, for that matter were held in good faith. *See* 20 C.F.R. § 404.511.

It may be that there is evidence to show that Kurt D. was not without fault, but as the ALJ's decision is written, it cannot be recommended to be affirmed. *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) (ALJ must "build an accurate and logical bridge between the evidence . . . and [his] ultimate conclusion."). The decision is not supported by citation to any application, notice, pamphlet, or communication provided to Kurt D., in any format, prior to the notice that he was overpaid, that advise him of his reporting requirements or of the Trial Work Period. The reasons relied on by the ALJ for his conclusion that Plaintiff knew or should have known he needed to furnish information or that acceptance of payment were either incorrect or unsubstantiated by the record. The post-disability-benefit-termination documents cited are contradictory (i.e., with regards to the number of work reviews Plaintiff was given), conclusory (i.e., in failing to indicate what documents or information were provided to Plaintiff), and uncorroborated by any evidence pre-disability-benefit termination. Although it is Kurt D.'s burden to prove that he was without fault, the ALJ has a duty to develop a full and fair record. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 1991). "Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence." *Id.* (*citing Thompson v. Sullivan*, 933 F.2d 581, 587 (7th Cir. 1991)). Thus, it is recommended that this case be remanded for further development of the record.[4]

---

[4] Because it is recommended that this case be remanded for further development of the record, analysis as to whether the ALJ erred with regards to Plaintiff's self-employment income is unnecessary and perhaps inappropriate given further factual evidence needs to be gathered as to what happened pre-benefit in Plaintiff's case.

### C. Questions of Fault and Principles of Equity and Good Conscience

Kurt D. argues that the ALJ erred by failing to address or analyze whether requiring him to repay the overpayment would defeat the purpose of the Social Security Act and go against principles of equity and good conscience. (Docket No. 19 at ECF p. 2). Kurt D. asks that, above and beyond a remand, the Court simply determine that he was without fault and that it would be inequitable to force him to pay back the $34,687.40 overpayment he received. (Docket No. 19 at ECF p. 14). This cannot be done. *See Kainer-Cargile*, 2013 WL 5587084, at *5 (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356-67 (7th Cir. 2005)). The Court's task is to review the ALJ's decision, not render its own decision on the evidence.

### Conclusion

For all these reasons, the Magistrate Judge recommends that the Court **REMAND** the ALJ's opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 26th day of July, 2019.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.